# CHARLESTOWN.

DUNCAN, FORD & ELDER *v.* CUSTARD *et ux.*

AND

CUSTARD *et ux. v.* BOWLES *et al.*

Submitted January 26, 1883—Decided October 1, 1884.

1. A court of equity will declare a voluntary conveyance fraudulent as to subsequent creditors, if from the circumstances and other evidence the court is convinced, that the deed was made with the intent to defraud such creditors  The conveyance being voluntary, it is immaterial, whether or not the grantee had notice of such fraud.  (p. 737.)

2. A grantee in a deed of trust to secure a debt is a purchaser for valuable consideration.  (p. 737.)

3. On the 5th day of May, 1874, C. conveys his property to B., who on the same day conveyed it to E., the wife of C.  On March 20, 1875, a deed of trust on a part of the land so conveyed, executed by C. and wife to secure a debt to M., is recorded; on the 30th day of March another deed of trust on the same land to secure a debt to B. is recorded; and on July 8, 1876, another deed of trust on the same land to secure a debt to Bowles is recorded.  Judgments were recovered against C. as follows : One on the 29th day of October, 1875 ; another on the 19th day of November, 1875, and a third on the 28th day of November, 1876.  It does not appear whether the judgments were docketed :  HELD :

    I. Whether docketed or not, all the personal property, if any, not included in the deeds of trust and all the real estate not included in such trust should first be sold to pay said judgments in the order they were rendered.

II. The proceeds of the tract of land, on which are the three trust-liens, if the two prior judgments were not docketed, and those interested in the trusts had no notice of such judgments, must be applied to pay said liens in the order in which the trust-deeds were recorded, and any surplus must go to the payment of the judgments in the order above indicated.

III. If the two judgments recovered before the trust-deeds were executed were docketed within ninety days from their rendition, respectively, or before said trust-deeds were recorded, they would take precedence over such trust-liens, provided there was not sufficient other property to discharge them. (p. 738.)

4. A decree refers a cause to a commissioner to ascertain among other things, whether the rents and profits of the debtor's property will in a reasonable time pay the liens charged upon it, and the commissioner fails to ascertain such fact and gives as a reason, that no evidence was offered before him on the subject, and the report is excepted to because it fails to report this fact, the exception was properly overruled. (p. 739.)

5. Where two causes are heard together, it is proper to decree a docket-fee in each cause. (p. 739.)

6. Under section 1 chapter 151 Acts of 1872–3, when it appears to the court, that the property sought to be sold for the payment of debts is of greater value than five hundred dollars, it is error not to require in the order of sale, that it shall be advertised in a newspaper. (p. 740.)

7. Where a deed is fraudulent as to creditors, but good between the parties, in a suit to subject the land to the liens of creditors it is error to decree the conveyance void *in toto.* (p. 740.)

Johnson, President, furnishes the following statement of the case :

Thomas J. Duncan, Francis Ford, and John W. Elder, partners as Duncan, Ford & Elder, filed their bill in 1879 in the county court of Kanawha county to enforce the lien of their judgment against the lands of Silas R. Custard. The bill set out various deeds of trust and judgment-liens against said lands and described the lands and charged that on the 5th day of May, 1874, the said lands and certain personal property therein described was the absolute property of the said Silas R. Custard and was all the property he had ; that on that day with intent and for the purpose of defrauding

his aforesaid judgment-creditors, including the plaintiffs, he transferred and conveyed all the aforesaid property to his wife, Ellen R. Custard; that to avoid the manifest illegality of a direct conveyance from himself to his said wife, he resorted to a shift and pretence, which is charged to be fraudulent and void; that on the 5th day of May, 1874, for the expressed consideration of one hundred dollars but in fact without any consideration he granted and transferred all said property to one Wm. B. Buster, who with his wife on the same day conveyed the same to Ellen R. Custard, the wife of said Silas. The conveyances are filed as exhibits. In the first deed the consideration expressed is "one dollar and for other good and valuable considerations;" in the other the same consideration is expressed. The bill further alleges, that the transaction, on which said judgment was recovered, was commenced by said Custard on the 16th day of May, 1874, in Cincinnati two days after the recordation of the conveyance to Buster; but they aver, that they knew nothing of such conveyance until after the recovery of their judgment. They aver that there has never been any change of the possession of said property. They allege, that they knew, before they had the dealings with Custard, on which said judgment was founded, of his ownership of said property and relied on the fact of such ownership in having such dealings, and were in ignorance of any change in the ownership thereof, which change was concealed from the plaintiffs. They charge, that all of the several judgments were recovered for the price of goods, wares and merchandise sold to said Silas R. Custard, which went into the stock of goods, which was transferred by said deeds. The bill further alleges, that the said Custard and wife had executed a number of trust-deeds on a certain tract of one hundred and thirteen acres of land, one recorded on the 30th of March, 1876, to Job Huddleston, trustee, to secure three hundred and twenty dollars to W. B. Buster, one recorded March 20, 1875, to Theophilus Gaines, trustee, to secure to Mary E. Montgomery four hundred and seventy-five dollars; and another recorded July 8, 1876, to J. M. Johnson, trustee, to secure to A. J. Bowles five hundred dollars. The bill charges, that the several amounts so secured have been fully paid. The

prayer of the bill is, that the deed from Silas R. Custard to Wm. B. Buster and that from said Buster and wife to Ellen R. Custard be decreed to be fraudulent and void as to said judgment-creditors, and the said lands be subjected to the payment of said liens, and for general relief.

The deed from Custard to Buster purports to convey a tract of land known as the "Plum Orchard" tract; also another tract known as a part of the "Plum Orchard" tract; also all the grantor's right, title and interest in a tract described as the land purchased by S R. Custard of H. W. Brazie, commissioner; also all his right and interest in a tract of one hundred and thirteen acres known as the "L. H. Brannon place;" also his interest in a certain lease for fifteen years. The deed also transfers certain personal property therein mentioned. On the same day the said Buster and wife conveyed the same property to said Ellen, wife of S. R. Custard. On the 10th day of May, 1879, the cause was removed to the circuit court of Kanawha county.

There appears copied by the clerk in the record what purports to be the answer of Ellen R. Custard to the bill; but the original record, as well as that portion brought up by certiorari fails to disclose any order filing said answer, or making any reference thereto; the clerk in his return to the certiorari states, that no such order was made in the case. The answer is not a part of the record and cannot be considered; but fortunately no injustice is done to the said Ellen R. Custard, because she in conjunction with her husband filed an answer, which substantially set up the same defence, and the final decree states the cause was heard among other things on this answer with general replication thereto. The defence set up in this answer is substantially, that James Morris, the father of said Ellen, by his will, a copy of which is exhibited, bequeathed to her some eight thousand five hundred dollars; that all of the lands in the bill mentioned were purchased with her money, which was her separate estate, and were conveyed by her husband to W. B. Buster for her use and by him conveyed to her; that all the personal property named in the bill was inherited from her father or purchased with her money so obtained; that her husband always promised to secure to her her money and the lands

purchased with her money by putting it in her own name, if not, until put in her own name, her husband held it in trust for her. Silas R. Custard denies that complainants on the 16th day of May, 1874, or at any time before knew that he owned the property named in the bill or any part of such property. They further aver that the deeds mentioned in the bill were made and recorded before any of the debts mentioned in the bill, on which the judgments were rendered, were contracted, and that was notice to all parties. The whole property so conveyed, they aver is not worth five thousand dollars.

The cause was referred to a commissioner, who ascertained the liens on the lands as follows, with interest to June 1, 1881: Judgment of E. S. Arnold & Co., two hundred and thirty-five dollars and one cent; Duncan, Ford & Elder, three hundred and thirty-six dollars and thirty-seven cents; J. H. McLean, one hundred and fifty-one dollars and seventy cents. Specific liens on the L. H. Brannon place, interest to June 1, 1881: Montgomery trust, two hundred and seventy dollars and thirty-four cents; W. B. Buster trust, four hundred and nineteen dollars and twenty-five cents; A. J. Bowles' trust, six hundred and fifty dollars and twenty-four cents. This follows the date of the judgments, but no evidence is in the record, whether these judgments were ever docketed. The priorities of the trust-liens are fixed at the date of the recordation of the trust-deeds respectively. The report was excepted to generally by Custard and wife, but such exception as that will not be considered by this Court. Buster's administratrix excepted to the report because the priorities were not reported; because it was not ascertained, whether the rents and profits will pay debts in reasonable time; because there is no evidence to show when the judgments were docketed; because commissioner failed to report what other property Custard had. Bowles excepted because Buster's trust-lien was placed second, claiming that his should have been second.

W. B. Buster also answered the bill. In his answer he sets up his trust-deed, and denies the fraud charged in the bill, and avers that he is informed and believes, that the property conveyed to Ellen R. Custard was her sole and separate property.

Johnson, the trustee in the Bowles trust, was enjoined from acting under that trust. S. R. Custard and wife filed a bill, in May, 1878, upon which said injunction was obtained. The bill alleged, that the debt bore interest at ten per cent. and was usurious; that there was still a portion of the purchase-money due and unpaid on the land; that the land was susceptible of division, and ought to be divided before sold, and that there were prior judgment-liens on it, &c. Whether bond was executed and the injunction made effectual, is not shown by the record.

A. J. Bowles, the *cestui que trust*, answers the bill. In his answer he abated the excess of interest from his debt, and asked that this cause be heard with that of Duncan, Ford & Elder *vs.* S. R. and Ellen Custard, and the land be sold by a commissioner.

On the 17th day of December, 1881, the two causes were heard together, "upon the bills and exhibits therein referred to, the answers of Silas R. Custard and Ellen R. Custard his wife, A. J. Bowles, Mary E. Montgomery and W. B. Buster and the exhibits therein referred to, the bill in the first of the above entitled causes, and replication to said answers, the depositions of Enos S. Arnold, Benjamin F. Wyatt, and Thomas J. Duncan taken and filed for complainant in the first of the above entitled causes, the report of D. C. Gallaher heretofore filed, and exceptions endorsed, the answer of A. J. Bowles and Mary E. Montgomery to the complainants' bill in the last of the above entitled causes," &c., with replication to said answers, and was argued by counsel, and the court overruled the exceptions to commissioner's report, declared fraudulent and void *in toto* the deed from Custard to Buster, and from Buster and wife to Ellen R. Custard, decreed the priorities of the debts mentioned in said commissioner's report, as follows: First, the Montgomery debt; second, A .J. Bowles' debt; third, E. S. Arnold; fourth, Duncan, Ford & Elder; fifth, the Buster trust-debt, and sixth, the McLean judgment, and appointed a commissioner to sell the "L. H. Brannon" place, and did not require in the decree the sale of any other property.

From this decree Custard and wife and Buster's administratrix appealed.

T. B. Swann and T. L. Broun, for appellants.

W. H. Hogeman and E. W. Wilson, for appellees.

JOHNSON, PRESIDENT:

The first question presented is: Were the two deeds, one from Custard to Buster and the other from Buster and wife to Ellen R. Custard, fraudulent as to the creditors of said S. R. Custard? There is no evidence in the record, that Custard owed any debts at the date of the said two deeds, or at the recording of the first May 14, 1874. The second deed was recorded on the 4th of June, 1874. But from the allegations of the bill not controverted in the answer it appears, that Custard owned a store in Kanawha county; that the goods, for which the judgments were recovered, were, after the store had been transferred by said deeds, put into the said store, and the said Custard still remained in possession thereof; that Custard two days after the recordation of the deed from himself to Buster bought in Cincinnati, Ohio, of Duncan, Ford & Elder the bill of goods, for which their judgment was recovered. It appears from the deposition of Duncan, that he commenced to deal with their firm in 1872; that at the time he obtained the credit he represented to them, that he was the owner of real estate in the said county of Kanawha near his store; that on the strength of these representations the firm gave him credit; and that when he bought the last bill from them, on the 16th day of May, 1874, they supposed he was as responsible as any man, whose name appeared on their books. That he gave them no intimation that he had conveyed away his property, but bought the goods as if he were in the same financial condition he was when he had previously bought goods of them. The answer does not controvert the fact, that nothing was paid for the property, when the deeds were executed, but sets up as a fact, that it was paid for by money received from Ellen's father under his will, a copy of which was exhibited with the answer. There was a general replication to the answer and there is no proof in the record that the legacy, the amount of which is not specified in the will, was ever paid, or that one dollar of it was used by Silas R.

Custard.   The conveyance therefore must be regarded as voluntary.

This Court has distinctly held, that if it is shown, that there was *mala fides* or fraud in fact in the transaction, whether the actual fraudulent intent relates to existing creditors or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent creditors may for such fraud successfully impeach the conveyance. And such fraud may be made to appear by circumstantial evidence. It seems to me that the defendants have scarcely resisted the charge of fraud. The only defence against it they did not attempt to prove. The deeds under the circumstances of the case were properly declared fraudulent; and the conveyance being voluntary, it was immaterial whether or not the grantee had notice of the fraud.

The next question is: Were the priorities properly fixed in the decree? The bill alleges, that all the judgments recovered were docketed, but does not state when. This allegation of the bill is not controverted by any of the answers filed; and the commissioner has not reported, whether the judgments were or were not docketed. He was required in general terms to ascertain the liens and priorities on the property conveyed by the said two deeds in the bill mentioned. It is well settled, that the grantee in a trust-deed is a purchaser for valuable consideration. ( *Wickham* v. *Martin*, 13 Gratt. 427; *Evans* v. *Greenhow*, 15 Gratt. 153; *Weinburg* v. *Rempe*, 15 W. Va. 831.)

Section 5 of chapter 74 of the Code of 1868 provides, that every contract for the sale of real estate and every deed conveying an estate or term in real estate or goods and chattels "shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record, in the county wherein the property embraced in such contract or deed may be." Section 7 of chapter 139 of the Code provides, that "no judgment shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter in the county, wherein such real estate is, either within ninety days next after the date of the judgment, or

93

before a deed therefor to such purchaser is delivered for record." The statute of 1882 fixes the period after date of the judgment before recordation at sixty days.

In *Renick* v. *Ludington*, 14 W. Va. 367, it was held, that where various judgments are rendered against a debtor, and the junior judgments are docketed and the senior undocketed, and in this state of things the debtor conveys a part of the land to a purchaser for valuable consideration without notice of the undocketed judgments, and the docketed judgment-liens are not discharged, the liens of the undocketed judgments being the oldest must be discharged out of the proceeds of the unsold lands, although the effect might be to require the holders of the docketed judgments to resort in whole or in part to the land so conveyed for satisfaction of their judgment-liens. It follows, that if the judgments were docketed before the deeds of trust were recorded, the judgments would take precedence over the liens of the trust-deeds even on the land conveyed by such trust-deeds. The deeds charged in the bill to be fraudulent being in fact so, this cause as to all the liens stands, as if the said deeds had never been executed, because before the conveyance the husband owned them, and both husband and wife joined in executing the trust-deeds. It is claimed that Buster lost his priority, because he was the grantee in the first fraudulent deed. This does not follow. He is a purchaser for valuable consideration; and it is not charged in the bill, and no proof shows, that he had notice of any fraudulent intent in Silas R. Custard, the grantor. But at the time all the trust-deeds were executed, it was supposed that the title to the land was in Ellen R. Custard. Then all the trust-liens are on an equal footing if the judgments were not docketed prior to their recordation; and whether the judgment-liens are prior as to the land conveyed by the trust-deeds does not appear, as there is no evidence, when the judgments were docketed. If the judgments are undocketed, they must be satisfied out of the personal property, if any, and the unsold lands, that is, lands which have not been conveyed by trust or other deeds, according to their respective dates, and out of the proceeds of the lands, on which the trust-deeds are liens, after the trust-liens have been satisfied.

The commissioner must have treated the judgments as undocketed, for he puts the trust-liens first, which is right under any circumstances, as the Montgomery trust and the Buster trust were recorded before any of the judgments were recorded. The Montgomery trust was recorded March 20, 1875, and the Buster trust March 30, 1875, and the Bowles trust on July 8, 1876. The Arnold judgment was rendered on October 29, 1875, the Duncan, Ford & Elder judgment on November 19, 1875, and the McLean judgment on November 28, 1876. The judgments must all be satisfied, if there is sufficient for the purpose out of the property of Silas R. Custard, on which the deeds of trust are not liens, according to their respective dates. (*Renick* v. *Ludington*, 14 W. Va. 367).

The three deeds of trust must be satisfied out of the tract of land, on which they are liens, in the order of their recordation, if the judgments were not docketed. If the two first judgments were docketed before July 8, 1876, and there was not sufficient other property of the debtor, out of which to satisfy them, they would take precedence of the Bowle trust, as it was not recorded until July 8, 1876. The McLean judgment could take none of the proceeds of the "Brannon place" until after the two elder judgments, and the three trusts were satisfied. The exception to the commissioner's report that it failed to ascertain whether the judgments were docketed and when, ought to have been sustained.

The exception that the commissioner ought to have ascertained the rents and profits should not have been sustained, because he reports, that no evidence was brought before him on the subject. If the debtor and his wife, who were more interested in that matter than anybody else, did not choose to present evidence of that fact, the commissioner could not be expected to hunt up evidence thereof. The other exceptions were properly overruled.

It is also assigned as error that two docket-fees were charged. This was not error; for the two causes were heard together, and the plaintiffs failing in one, which they instituted, were properly charged with a docket-fee, and also failing in the suit brought against them were properly charged with a docket-fee in that suit. This being a matter of costs,

this Court would not reverse the decree for that error if it existed.

It is also assigned as error, that the court in the order of sale did not require the sale to be advertised in a newspaper, as it was manifest from the record that the land ordered to be sold was of greater value than five hundred dollars.

Section 1 of chapter 151 of the Acts of 1872–3 require, "that whenever a court shall hereafter decree the sale of real estate, if it appear to the court, that such real estate is of the value of five hundred dollars or more, it shall prescribe in the decree, that such sale, shall be advertised in a newspaper by the commissioner or person appointed to make the sale. It shall always be advertised in a newspaper published in the the county, if one be published therein, where the real estate to be sold is situated." This statute is mandatory; and it was error not to require the land to be so advertised, if it appeared to the court that its value was over five hundred dollars. I think from the record that it did so appear to the court. It only ordered one tract of land to be sold to pay about two thousand dollars of debts. If the debtor wishes to avoid the expense of advertising in a newspaper, he should by affidavits or otherwise satisfy the court that the property is not worth five hundred dollars. The decree in this cause does not direct the commissioner to advertise the sale at all. Another error, which appears on the face of the decree, is that the two deeds declared fraudulent were cancelled *in toto.* It should only have declared them void as to the creditors of the grantor, Silas R. Custard, (*Murdock* v. *Welles,* 9 W. Va. 552). It was error as we have before seen to postpone the Buster debt to that of Bowles.

Unless it was perfectly clear to the court, that the one tract of land decreed to be sold was sufficient to pay all the liens, the court should have ordered all of the personal property, if any, and lands sufficient to pay the liens. So that it would not be necessary to report back a deficiency and have another sale, and thus sell the defendant's property by piecemeal, with all the attendant costs and burdens of such proceedings.

The decree appealed from is reversed with costs to the ap-

pellants, and these causes are remanded with instructions to refer the first of them to a commissioner, to fix the liens and their priorities as herein indicated, and for further proceedings.

REVERSED. REMANDED.