# CHARLESTON.

DENT *v.* PICKENS.

Submitted September 9, 1901. Decided January 21, 1902.

1. FRAUDULENT CONVEYANCE—*Appeal—Equity.*

    Where a suit in equity is brought for the purpose of setting aside a fraudulent deed of trust on land, charged by will, probated before the time of the execution of such deed, with payment of a sum of money to the testator's estate, and the bill does not allege payment of the money so charged upon the land, and is dismissed at the hearing in the court below, and the decree is reversed on appeal, and the cause remanded, and no notice is taken in the opinion or decree in the appellate court, of the lien created by the will, the question of the satisfaction of such lien is not *res adjudicata.* (p. 384).

2. FRAUDULENT CONVEYANCE—*Priorities—Liens.*

    In a suit brought to set aside a fraudulent charge upon real estate when there are valid liens on the land, prior to that of the plaintiff, in such suit, and the money secured by them is due and payable, the court should ascertain the amounts and priorities of such liens, and decree the land to be sold to satisfy said liens as well as that of the plaintiff. (p. 387).

3. DECREE—*Prior Liens—Sale.*

    In such case it is reversible error to decree a sale of the land subject to prior liens. (p. 389).

Appeal from Circuit Court, Barbour County.

Suit By Susan C. Dent against Dever Pickens and others. Decree for plaintiff, and defendant John D. Pickens appeals.

*Reversed.*

A. G. DAYTON and FRED O. BLUE, for appellant.

J. HOP WOODS, for appellee.

POFFENBARGER, JUDGE:

This is an appeal from a decree of the circuit court of Barbour County in the chancery cause of Susan C. Dent against Dever Pickens and others. Practically all of the facts and proceedings leading up to the matters out of which the questions presented arise will be found in the cases of *Dent* v. *Pickens,* 34 W. Va. 240, and *Dent* v. *Pickens,* 46 W. Va. 378. Susan C.

Dent recovered a judgment against Dever Pickens for nine thousand dollars in an action for breach of marriage contract. Before the judgment was obtained and all questions of the liability of Pickens, in that respect, were finally determined, he executed a deed of trust by which he made a fraudulent conveyance of all the property he had. As soon as said deed was executed, the plaintiff in the action at law brought a chancery suit to set it aside and said chancery cause came to this Court on appeal and was here determined as reported in 46 W. Va. 378. This Court, as will be seen, held the deed of trust fraudulent as to all the claims therein mentioned except the claim of Ann M. Pickens, for two thousand five hundred dollars subject to a credit of one hundred and fifty dollars, and the cause was remanded with directions.

After it went back to the circuit court a decree was made on the 23rd day of February, 1900, which purports to be according to the opinion delivered in said case on said appeal. There were three tracts of land, one containing eighty-six acres and one hundred and thirty-three poles, purchased by Pickens at judicial sale in the cause of Byron Love and wife against M. W. Coburn and others, another tract containing eighty-eight and one-half acres, purchased by Pickens at judicial sale in the cause of W. W. Daniels and others against M. W. Coburn and others, and another tract containing three hundred and ninety-six and three-fourths acres, which was devised to him by James Pickens, deceased. The decree recites that the first two tracts had been sold by proceedings in said two causes for a balance of purchase-money due thereon from Pickens and the surplus proceeds paid to Squire Crouso, who was general receiver of the court. The other tract of land was decreed to be sold, subject to the lien of Ann M. Pickens for two thousand five hundred dollars with interest thereon from October 1, 1887, subject to said credit of one hundred and fifty dollars as of October 1, 1887. This tract of land had been given to Dever Pickens by his father, James Pickens, by the following testamentary provision, found in item ten of the will: "To my son, Dever Pickens, I devise one tract of land containing three hundred and sixty acres and another tract of land adjoining the same containing thirty-six and three-fourths acres, containing together three hundred and ninety-six and three-fourths acres, which I estimate and value to him at the price of sixteen thousand dollars, of which he is required to pay

to my executors the sum of two thousand dollars, which I declare to be a lien and charge on said land, in three equal installments, payable in one, two and three years after my death, which constitute apart of my personal estate." The testator died January 22, 1887. On January 27, 1887, Susan C. Dent instituted her action at law. On January 24, 1889, she commenced this chancery suit. The devises to Dever Pickens and others were made subject to the limitation that if they should "die without children or the lawful issue of such children living at the time of his or her death, or born within ten months thereafter, then, in that case, the land shall descend to each of the surviving children" of the testator. In the decree complained of here, it is recited, that Dever Pickens had two children still living, and the devise to him is therein held to give him an estate in fee simple, possibly defeasible, in said three hundred and ninety-six and three-fourths acres of land.

The assignments of error are that the court erred in holding that said Dever Pickens was seized of the fee simple title, possibly defeasible, in said land; in not ascertaining the amount due upon the trust debt of Ann M. Pickens and decreeing the same to her as a lien upon said land, to be paid before the plaintiff's debt; in not ascertaining the amount due to the estate of James Pickens on account of the two thousand dollars, which was expressly made a lien and charge upon said land, and in not decreeing the same to be paid before the plaintiff's debt; in not referring the cause to a commissioner to ascertain the liens, their amounts and priorities, and to whom owing, before directing a sale; in decreeing the sale of the land subject to the trust lien in favor of Ann M. Pickens, without having ascertained the liens, etc.

The only appellant here is John D. Pickens, executor of the will of James Pickens, deceased, and as all the assignments of error must, therefore, relate to, or depend upon, the question whether the estate of said James Pickens, represented by said executor, has any interest in the land decreed to be sold, it becomes necessary to consider that question first. As has been seen, the testator charged upon said tract of land the payment of two thousand dollars to his estate for the benefit of the beneficiaries of his will. It is insisted by counsel for appellee that there is not now any lien upon said land for said sum of two thousand dollars. One reason assigned for this is that Dever Picken's

portion of his father's estate under the will amounted to from fifteen thousand dollars to sixteen thousand dollars, and no reference to this two thousand dollars is made in his deed of trust dated January 14, 1889, whereby he undertook to secure to his father's estate said sum of five thousand dollars, and that in an *ex parte* settlement of the estate made by the executors in 1888, said Dever Pickens was a creditor of the estate to the amount of four hundred and nine dollars and seventeen cents, and that for the purposes of taxation the executors charged themselves in the year 1887 with twenty-seven thousand five hundred and thirty-five dollars, in 1888 with ten thousand dollars and in 1889 with ten thousand dollars. From these facts it is argued that the two thousand dollars charged upon the land must have been settled and paid by said Dever Pickens. The *ex parte* settlement shows that said Dever Pickens collected thirteen thousand one hundred and thirty-four dollars and three cents, as executor, and disbursed the sum of twelve thousand eight hundred and ninety-eight dollars and twenty-nine cents, and the commission allowed him amounted to six hundred and forty-four dollars and ninety-one cents, which thus made him a creditor to the extent of four hundred and nine dollars and seventeen cents as aforesaid. This could hardly be considered as proof of the payment of the two thousand dollars. There is nothing in the evidence to indicate whether the two thousand dollars was a part of the claims thus collected. That settlement was made in 1888. The testator died January 22, 1887. No part of the two thousand dollars became due until one year after the testator's death. At the time said settlement was made two-thirds of the money was not yet due. Besides this John D. Pickens, co-executor of Dever Pickens, alleges in his answer and testifies that no part of said two thousand dollars has ever been paid. With reference to the bringing of this suit, the second one-third of said money became due two days before the suit was brought and the last one-third about a year afterwards. Moreover, it is to be remembered that the purpose of this suit was to set aside the deed of trust executed by Dever Pickens January 14, 1889, and not to attack or invalidate the lien created by the will. That deed of trust pretended to secure five thousand dollars due from Dever Pickens to his father's estate, for "money collected by him as such executor and not accounted for." There is no pretense that the two thousand dollars was included in said five thousand dollars, and

if it had been, the mere incorporation of it into the deed of trust would not release the lien created by will nor render the two thousand dollar charge fraudulent or invalid in any way. The plaintiff filed a bill, first amended bill and second amended bill, and in none of these bills is there any allegation or charge that said two thousand dollars has been released or paid in any way. The contention, therefore, that the matter of this two thousand dollar claim is *res adjudicata* is not tenable. No issue was ever made upon it and it is not enough that it might have been set up in the same suit. Nothing charged in the bill made it necessary for the executors to assert said claim by way of defense to the bill. It, therefore, does not belong to that class of things which are deemed to be *res adjudicata* because they might have been litigated. This doctrine of *res adjudicata* is very fully considered in the case of *Biern* v. *Ray,* 49 W. Va. 109, (38 S. E. 530), where it is held that the mere fact that the suit was such as might have enabled the parties to have litigated a certain matter which was not in issue, and which was not drawn necessarily into litigation as a legitimate matter of defense is not deemed to have been adjudicated. Point 1 of the syllabus in said case reads as follows: "A judgment or decree upon the merits of the case is a bar or estoppel against the prosecution of a second suit upon the same demand, not only as to every matter which was offered and received to sustain or defeat the claim, but also any other admissable matter which might have been used for that purpose." The authorities cited in that case show conclusively that the principle is not so broad as is claimed by counsel for appellee. Matters are not adjudicated which have never been pleaded, or which the party asserting them was not bound to plead in the former suit by way of defense or in support of his claim as plaintiff. Nor can any language used in the opinion, delivered in this case, when in this Court upon the former apppeal, indicating that the lien in favor of Mrs. Ann M. Pickens is the only lien prior to the claim of the appellee, be taken to exclude the two thousand dollar claim, for the reason that the court, as well as all parties to the suit, was dealing with the sole question of the fraudulency of said deed of trust and could have decided nothing further than whether that deed of trust was valid or invalid. It was held invalid as to all the debts, purporting to be secured by it, except that of Mrs. A. M.

Pickens, and that is all the language of the opinion delivered can be taken to mean.

It is not intended here to hold that no part of said two thousand dollars has been paid. The qeustion of payment has never been litigated and is, therefore, open. All that is intended in what has been said upon the question of evidence is in reply to the brief of counsel for appellee and in explanation of the holding that this record does not show a satisfaction of said claim nor release of the lien therefor. The court, therefore, should have ascertained the amount due on said claim to said estate. If said lien has never been discharged by payment, there are two liens upon the land prior to that of the appellee, first, the lien in favor of the estate of James Pickens, and second, the lien in favor of Ann M. Pickens. The decree should have ascertained the amount due on said first two claims and fixed the order of priority of all of said liens and decreed a sale of the land to satisfy all of them, for the reason that at the time said decree was made the amounts due to the estate of James Pickens and to Ann M. Pickens had become due and payable. In *Scott* v. *Ludington,* 14 W. Va. 387, it is held to be error to decree a sale of land subject to prior liens. In *Laidley* v. *Hinchman,* 3 W. Va. 423, it is held that "After the debts secured by the trust fall due and no sale is made thereunder, the court will interfere for the benefit of judgment liens younger than the trust, and will direct a sale of the land, and not the equity of redemption alone, to satisfy the debts of both classes of creditors." In *Anderson* v. *Nagle,* 12 W. Va. 98, it is held that where there are two judgment liens and one judgment creditor brings a suit to enforce the lien of his judgment, making the other judgment creditor a party, the decree should be for sale to satisfy both judgments, although the defendant judgment creditor did not answer the bill nor ask any sale. A number of authorities hold that·it is error not to ascertain and fix the amounts and the priorities of the liens upon land in decreeing a sale of it. *Murdock* v. *Wells,* 10 W. Va. 206; *Scott* v. *Ludington,* 14 W. Va. 387; *Livesay* v. *Jarrett,* 3 W. Va. 283; *Beard* v. *Arbuckle,* 19 W.· Va. 135; *Zell Guano Co.* v. *Heatherly,* 38 W. Va. 409.

There is a class of cases which hold that under certain circumstances the court may decree a sale subject to prior liens, but this case does not fall within that class. Thus in *Wise* v. *Taylor,* 44 W. Va. 492, it is held that "Where the owner of real estate

has executed a valid deed of trust upon the same to secure the payment of a loan (which is evidenced by note or bond) contracted to be paid in installments, which have not yet matured, when a creditor obtains a judgment against the grantor in said trust deed, and proceeds to enforce his judgment lien in a court of equity, he can only subject the equity of redemption; and the court has no power to change the terms and conditions of the deed of trust as to the maturity of the loan thereby secured." See also *Pack* v. *Hansbarger,* 17 W. Va. 314; *Snyder* v. *Martin,* 17 W. Va. 276. It is also held that any suit brought to have a conveyance declared void as to creditors and subject the land to payment of the debts of such creditors it is not necessary that all the creditors of the fraudulent grantor or debtor should be convened and their debts reported. *Core* v. *Cunningham,* 27 W. Va. 207; *Blubaugh* v. *Loomis,* 37 S. E. 794; 48 W. Va. 666. It is urged by counsel for appellee that the principle announced in said last two cases renders it unnecessary to ascertain the liens and adjust the priorities thereof upon the land involved in this suit. While it is true that all the creditors need not be convened, the record here shows three liens upon the property. In the decree one of them has been entirely ignored, and the sale is to be made subject to the second one by the terms of the decree. There are certain provisions in the statute which make it necessary to proceed in a suit brought for the purpose of enforcing the lien of a judgment upon real estate in a manner different from the procedure upon a bill to set aside a fraudulent conveyance. In such case the statute requires a convention of the creditors, publication of a notice to lien holders and an ascertainment of whether the rents, issues and profits of the land will be sufficient to discharge the liens in five years, and make provision for the distribution of the proceeds of the land. In a case like this some of these proceedings are unnecessary of course, but it does not follow that, because they are unnecessary, the principle of equity requiring an adjustment of liens and ascertainment of the amounts due should be ignored. To the end that the property may sell to the best advantage, it is necessary, when practicable, to sell the land to satisfy all the liens upon it, so that the purchaser may know what he is buying and what he is paying for it. In decreeing a sale of real estate, the courts will, as far as possible, relieve the land of all uncertainty as to incumbrances, for the reason that such uncertainty is an impediment

to the sale and tends to a sacrifice of the property. There being no obstruction to the sale of this land to satisfy all the liens upon it so as to give the purchaser the land unincumbered, the decree of sale should have so provided. This disposes of all the assignments of error except one which will now be noticed.

The decree of sale contains the following recital respecting the interest of Dever Pickens in said three hundred and ninety-six and three-fourths acres of land: "And it further appearing to the court from the record herein that said defendant, Dever Pickens, by the consummation of said contract of marriage thereunder to the defendant, Minnie Coburn, had issue of two children, still living, and thereby enlarged the devise of said James Pickens to him of said three hundred and ninety-six and one-half acres or three hundred and ninety-six and three-fourths acres in said will mentioned into an estate in fee simple, possible defeasible, and which is liable to be sold," etc. It is insisted by counsel for appellant that the court erred in thus holding that Dever Pickens is seized of an estate in fee simple, possible defeasible, in said land. Even if this recital could be regarded as an adjudication of the question of the nature and extent of the estate taken under the will, it is not perceived how the appellant could be injured thereby. He stands here as a creditor only, having no interest in this suit other than to obtain a decree for the payment out of the proceeds of the land of the claim due to him as executor. There are neither parties nor pleadings here to authorize the court to determine the question so as to bind any person who may be entitled to the land in case of the death of Dever Pickens without children or the lawful issue of such children living at the time of his death, or born within ten months thereafter. The recital is not such as is calculated to depreciate the value of the land or to limit the estate to less than that given by the will, and is, therefore, clearly not prejudicial to the creditor who is interested in having the land bring as much money as possible. Under such decree the purchaser would take only such title as is vested in Dever Pickens. The court never warrants title. Bart. Ch. Pr., 1189. Said assignment of error is, therefore, not well taken.

For the reasons aforesaid, so much of the decree complained of as relates to, and directs a sale of, said three hundred and ninety-six and one-half acres of land, and affects the liens thereon in favor of the estate of James Pickens, deceased, and Ann M.

Pickens must be reversed, and in all other respects it is affirmed. And this cause is remanded to the circuit court of Barbour County, which court is directed to ascertain how much is due and unpaid on said claim in favor of the estate of Jàmes Pickens, deceased, and on account of said debt due Ann M. Pickens, and then decree a sale of said land to satisfy and pay off first, the amount ascertained to be due the estate of James Pickens, deceased; second, the amount due Ann M. Pickens; and, third, the amount due the plaintiff, Susan C. Dent. It is suggested in the petition for rehearing that the decree should hold any unpaid taxes on the land to be the first lien thereon and provide for the payment of such taxes. The record discloses nothing as to taxes, but, if a claim for such taxes should be properly asserted in the court below, it is entitled to preference over all others and should be provided for in the decree.

*Reversed.*